**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Equal Employment Opportunity Commission,** | ) ) ) | **CASE NO. 11 CV 260** |
| **Plaintiff,** | ) ) | **JUDGE PATRICIA A. GAUGHAN** |
| **vs.** | ) ) | |
| **Presrite Corporation,** | ) ) | <u>**Memorandum of Opinion and Order**</u> |
| **Defendant.** | ) ) | |

Another discovery dispute is before the Court in this case.  Defendant Presrite

Corporation (Presrite) moves to compel Plaintiff Equal Employment Opportunity

Commission (EEOC) to provide certain discovery and for an order *in limine* precluding

certain evidence.  Pending is Presrite's "Motion to Compel Further Deposition Testimony

from Lynn Gagyi as Investigator and as the 30(b)(6) Designee and Identification of Any and

All Victims of Discrimination and Motion *In Limine* Regarding Witnesses Identified in the

EEOC's Supplemental Response to Interrogatory No. 3."  (Doc. 53.)  The EEOC opposes the

motion.  For the reasons stated below, the motion is granted in part and denied in part.

1

**Discussion**

**I.  Presrite's Motion to Compel Discovery**

Presrite's moves pursuant to Fed. R. Civ. P. 37 to compel:  (1) further deposition testimony from the EEOC's witness Lynn Gagyi, both in her role as investigator and in her role as the EEOC's designee to a Rule 30(b)(6) notice of deposition; and (2) identification by the EEOC of any and all alleged victims of discrimination.

**1.  Further Deposition Testimony of Lynn Gagyi**

On March 23, 2012, Presrite issued two notices of deposition on the EEOC, a notice seeking the deposition of Lynn Gagyi in her role as the EEOC investigator and a Rule 30(b)(6) notice of deposition seeking an EEOC designee to testify on six stated topics.  The EEOC agreed to produce Investigator Lynn Gagyi for deposition in her individual capacity and agreed to produce a Rule 30(b)(6) designee.  However, the EEOC sought a protective order seeking to limit the scope of both of these depositions.  The EEOC agreed to provide a deponent to testify regarding portions of the 30(b)(6) notice seeking factual information but sought a protective order precluding aspects of the Rule 30(b)(6) deposition as well as Gagyi's individual deposition on a number of grounds, including the deliberative process and attorney client privileges and the work product doctrine.  The Court granted the EEOC's motion for a protective order only as to topic 5 of the Rule 30(b)(6) notice (as the EEOC had disavowed that it was asserting a disparate impact claim and topic 5 sought testimony as to the policies used by the EEOC for conducting a statistical analysis pertaining to disparate impact).  The Court otherwise denied the EEOC's motion for a protective order because no specific objections were presented at the time.  The Court stated that the appropriate course of

2

action was to address specific objections to specific questions posed of Ms. Gagyi when and if such objections arose.

Presrite subsequently issued an amended Rule 30(b)(6) notice of deposition, incorporating the first four topics of its original notice and adding four additional topics. Ultimately, Presrite sought the testimony of an EEOC designee on the following eight topics:

1. Factual information and documents that support or rebut the EEOC's allegation in the Complaint that Presrite "failed to or refused to hire females on the basis of their sex and engaged in a pattern and practice of sex discrimination in the hiring of females."

2. Factual information and documents that support or rebut the EEOC's allegation in the Complaint that Presrite discriminated against females in the hiring process by "refusing to refer females to agencies for whom Presrite provided application," "refusing to refer females for interviews for employment," "refusing to interview females," and "refusing to hire females."

3. Factual information and documents that support or rebut the EEOC's allegation in the Complaint that Presrite failed "to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed."

4. Policies, procedures, practices and criteria used by the EEOC that determine or effect the scope of the investigation conducted or complaint brought to the EEOC on behalf of "all women," including but not limited to factors taking into account when determining the group of persons who potentially may be aggrieved by allegations or factors identifying an underlying charge(s)."

5. Factual information and documents that identify each and every example of disparate treatment (i.e. each woman who was treated differently than each man).

6. Factual information and documents that identify the total number of applicants that the EEOC alleges applied from 2004 to present, the number of men who applied, the number of women who applied, the number of men offered a job (whether or not they accepted the position and worked for Presrite) and the number of women offered a job (whether or not they accepted the position and worked for Presrite).

3

7.  Factual information and documents that identify the total number and name of applicants allegedly excluded from the applicant flow log (previously identified by investigator Lynn Gagyi as 800+).

8.  Identification of incentive programs established by the EEOC's systemic task force report dated March, 2006, identifying who in this case got the benefit of such incentives, investigator Lynn Gagyi's compensation for 2004 to the present, who received incentives as a result of the EEOC's investigation into Area Temps, who received incentives as a result of the EEOC's investigation into Presrite, and the amount of such incentives.

9.  Policies, procedures, practices and criteria used by the EEOC for conducting statistical analysis.

Gagyi's deposition as investigator and Rule 30(b)(6) designee took place over the course of a number of days between April and July.  During the depositions, the EEOC asserted multiple objections, and instructed Ms. Gagyi not to answer numerous questions posed by Presrite.  Presrite moves to compel further deposition testimony of Gagyi, contending that the EEOC improperly objected to questions it posed seeking discoverable "factual information contained in the [EEOC's] investigative file, factual aspects of the material investigation, and the process used in the investigation."  (Rep. at 1. )  The EEOC opposes Presrite's motion, contending that the questions at issue "go far beyond obtaining the facts gathered during the EEOC investigation."  Rather, the EEOC contends the questions at issue are "not reasonably calculated to lead to the discovery of admissible evidence" and "are so broad as to compel disclosure of information protected by the government's deliberative process privilege, law enforcement privilege, and attorney work product privilege."  (Opp. at 2.)

Presrite first seeks to compel Gagyi's testimony as to a number of questions it posed of Gagyi in her capacity as investigator.  The EEOC primarily objects to these questions on

4

the ground that the information sought is protected by the "deliberative process privilege." The EEOC does not set forth a helpful, succinct explanation of this privilege (or the other privileges it asserted for that matter).  Courts have stated that the "deliberative process privilege" protects documents and communications that are "predecisional and deliberative, prepared to assist an agency decision maker in arriving at his decision."  *EEOC v. Reed Pierce's Sportsman's Grille, LLC*, 2012 WL 3150272, at *1 (S.D. Miss. 2012).  However, the privilege does not protect disclosure of purely factual or objective information that is not considered deliberative.  Thus, factual information pertaining to the EEOC's claims, factual information gathered and obtained by the EEOC investigator, and factual information about the activities the EEOC conducted are not covered by the privilege.  "Conclusions," "interpretations," "impressions," or "recommendations" formulated by the investigator are subject to the privilege.  *See Little v. Auburn Univ.*, 2010 WL 582083 (M.D. Ala., Feb. 17, 2010).

With this in mind, the Court rules as follows with regard to the specific deposition testimony Presrite seeks from Gagyi in her capacity as investigator.

Presrite first seeks to compel Gagyi's testimony as to which claimants, on a list of 108 potential claimants the EEOC provided to Presrite, Gagyi spoke with as part of her investigation.  Presrite asserts that Gagyi's deposition was suspended in order to enable her to review her investigative file so that she could be certain which potential claimants she spoke with.  However, when Gagyi's deposition resumed, Gagyi stated that she was not prepared to

identify the claimants.[1]  The EEOC has not specifically responded in its opposition brief to

Presrite's motion to compel Gagyi's testimony in this regard.   The Court grants Presrite's

motion to compel Gagyi to testify as to which potential claimants she spoke with.  The

question seeks factual information.

Presrite next seeks to compel answers to the following questions it asked Gagyi

regarding her investigation:

Q. What facts from your investigation do you recall including in your recommendation?

MR. STERN: Objection.

MR. SATULLO: You don't have to get your note cards out, Jeff. You can just say objection
and instruct the witness not to answer.

MR. STERN: Objection, it's beyond the scope of factual matters obtained during
investigation, and how the investigator parse[d] those facts in a recommendation,
governmental deliberative
privilege process. Attorney adopted work product privilege regarding recommendation,
attorney/client communication privilege regarding recommendation. Instruction not to
answer the pending question.

MR. SATULLO: Okay.

Q.  In your investigation did you find facts that support the contention that Presrite
discriminated against females in its hiring processes?

A.  Yes.

Q.  And can you tell me what facts those are?

---

[1]Presrite asked Gagyi when her deposition resumed:

Q: All right.  Let me put it like this.  Today, are you in a position to state
definitely from your review of your investigative file, which of the people
identified on Exhibit C, that you spoke with during the investigation; yes or no?
Are you prepared to testify as to who those individuals are; yes or no?

A: No.

MR. STERN: Objection, calls for deliberative privilege process regarding the connection between the facts and any particular findings.  If you focus on the evidence obtained during the
investigation, documents testimony–

MR. SATULLA:  Well, here, let's do it like this.

Q: Without telling me what they are, I assume that you found facts during your investigation that you didn't think were indicative of discrimination, is that correct?

MR. STERN: Objection, instruction not to answer.  Not discoverable what the investigator thinks, believes and feels about the investigation.  It's irrelevant to a trial de novo. Also, objection on the grounds of deliberative privilege process regarding investigator's thoughts, beliefs, feelings, suppositions, conclusions.  Instruction not to answer the pending question.

This questioning by Presrite falls on the side of seeking non-deliberative factual information and should be allowed.  While the deliberative process privilege protects Gagyi from disclosing her conclusions, impressions, and opinions about the facts she found during her investigation, Presrite is entitled to discover the actual facts Gagyi found during her investigation.  Thus, the Court grants Presrite's motion to compel Gagyi to testify as to the facts Gagyi found during her investigation.

The EEOC's counsel next instructed Gagyi not to answer multiple question by Presrite's counsel about the "process" by which the Commissioner's Charge of discrimination was issued and Gagyi's role in the process.   First, Presrite asked Gagyi:

Q: Were you familiar with the process by which the commissioner's charge was issued?

A. Yes.

Q. What is that process?

MR. STERN: Objection.

MR. SATULLO: I'm just asking her to describe logistically what the process is, I don't want to know her thoughts or anything else.

7

MR. STERN: Can I have the question back, please.
(Record read.)

MR. STERN: Objection with respect to disclosure of any deliberations, recommendations, analysis, thoughts, beliefs, opinions –

MR. SATULLO: I didn't ask those.

MR. STERN: -- with respect to the process.

Q. Lynn, do you understand my question? I want to know where that process started, did it start in the Cleveland office?

MR. STERN: Objection, deliberative process privilege as to which offices may or may not have begun the process.

MR. SATULLO: You're serious?

MR. STERN: (Nodding in the affirmative.)

   The EEOC's objections in this regard are also not well-taken.  Presrite's questioning as to the EEOC's process seeks factual information, what happened logistically when and where.  These questions do not seek theories or opinions of Ms. Gagyi, the EEOC, or the substance of any privileged communications.  The Court requires Gagyi to testify as to such facts.

   Presrite asked Gagyi the following regarding her role as investigator:

Q. At any time prior to the commissioner charge being signed off and transmitted to the Cleveland office, did you personally ever discuss with anyone at the EEOC that a claim of systemic discrimination ought to be made against Presrite?

MR. STERN: Objection with respect to discussions and recommendations by an EEOC investigator in discussions with other EEOC staff. Governmental –

   This question also seeks non-deliberative factual information and is permitted.  The question asks Gagyi to state whether she had discussions with others at the EEOC regarding whether a claim of systemic discrimination should be made against Presrite.  The question

8

does not appear to ask Gagyi to disclose the content of conversations.  Presrite is entitled to

know, at least, the fact of whether Gagyi as investigator ever personally discussed the stated

topic with others.

Finally, Presrite asserts that it is entitled to ask Gagyi questions about her

recommendation as investigator:

Q. Can you tell me as best as you can recall since you've read the recommendation and it was
in the charge file that you reviewed, what the recommendation stated?

MR. STERN: Objection, strain [sic] from the factual matters obtained during the investigation
–

MR. SATULLO: Hardly, it's a fact that I want to know.

MR. STERN: -- into governmental deliberative process privilege.

MR. SATULLO: All right. Are you instructing the witness –

MR. STERN: Objection. Objection further with respect to attorney/client privilege regarding
any
recommendation and adopted work product privilege regarding recommendation. Instruction
not to answer the pending question. If you focus on factual information obtained during the
investigation I won't kind of draw these objections.

 . . .

Q. Did you recommend to anyone at the EEOC that a commissioner's charge ought to be
pursued against Presrite?

MR. STERN:  Don't answer that question.

MR. SATULLO: Don't answer that question that she -- whether she –

MR. STERN: Recommendations of an EEOC investigator protected by deliberative privilege
process. They are protected by law enforcement privilege. They are protected by
attorney/client communications privilege. Don't answer the pending question.

The EEOC's objections to these questions are sustained.  The questions ask Gagyi to

testify as to the substance of her "recommendation."  Such testimony falls within the scope of

9

the deliberative process privilege.

The EEOC next objected to the following inquiry of Presrite:

Q. All right. We'll move on to the next question. At the time that Presrite had a commissioner's charge issued against it, was a commissioner's charge issued against any other Cleveland or Northeast Ohio area companies?

MR. STERN: Objection, and instruction not to answer regarding other commissioner's charges that may or may not exist, and have not resulted in this litigation. Don't answer questions about
other commissioner charges.

Presrite asserts that it was well-known that Gagyi was investigating other companies at or around the time she was investigating Presrite.  It asserts that it asked this question "[t]o completely understand the overall process and Ms. Gagyi's role as an investigator."  In its opposition brief, the EEOC contends that Presrite is not entitled to make this inquiry because the disclosure of Commissioner charges about which litigation has not been filed is prohibited by 42 U.S.C. § 2000e-8(e).  That statute provides:  "It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. . . ."  The Court sustains the EEOC's objection to this question, as Presrite does not refute the EEOC's assertion that disclosure of whether Commissioner charges were filed against other companies would violate 42 U.S.C. § 2000e-8(e).

Next, Presrite asked Gagyi questions about the process she and the EEOC used to determine that applications were missing or applicant names were missing from the applicant

10

flow log.[2]  Presrite asserts that it sought to inquire of Gagyi as to the "process" Gagyi went

through to determine that applications were missing.  The following transpired:

Q. Now, tell me the process that you went through or anyone else at the EEOC, by which you could conclude that people were missing -- either the applications were missing or their names were missing from the applicant flow log?

MR. STERN: Objection, deliberative privilege process, analysis impressions of the witness are not facts obtained during the investigation.

 . . .

Q. Do you agree that one of the things that you did to uncover facts in your investigation was to do the simple task of counting? Didn't you count things? Certainly you came up with the number 800. Do you acknowledge that in order to come up with that number you had to do some counting?

MR. STERN: Objection, incorrect –

MR. SATULLO: Keep objecting because it keeps showing where your client's case is.

MR. STERN: -- also calls for deliberative privilege – deliberative process privilege.

MR. SATULLO: And on the record, Mr. Stern, I want to know what the deliberative privilege process is with respect to the question of whether counting was involved? Please, tell me that, or --because it really starts my clock going on my request for sanctions against the EEOC, you

personally, Ms. Gagyi in her personal capacity. So why don't you tell me what is improper

about asking her if there was counting involved?

MR. STERN: The Commission's method of investigation is protected by deliberative privilege process, and is far beyond the scope of factual information obtained during the investigation. Counting is not factual information.

MR. SATULLO: Counting is not factual information.

Q. Do you think the number 800 is a fact, Lynn? Do you think that 800 is a fact? Aren't you

---

[2]

The EEOC has asserted in the case that Presrite failed to preserve applications and, as a result, engaged in record-keeping violations.  Presrite asserts that the EEOC has concluded that applications among those listed on an "applicant flow log" have not been produced and that some names of applicants are not listed on the applicant flow log.

stating that there are that many things when you use that number?

MR. STERN: Objection. What the investigator thinks sitting here today is not a fact obtained during the investigation. It's beyond the scope of what was covered. It's also privileged.

Q. Lynn, where did you get that fact of 800 applications missing, Lynn? Where did you get it?

MR. STERN: Objection. What the investigator thought and relied upon –

MR. SATULLO: That's not what I asked, Jeff. Why don't you try listening. I just said where did she get it.

MR. STERN: Her answer would have to reveal the process of used –

MR. SATULLO: Analysis?

MR. STERN: -- to generate the figure.

MR. SATULLO: You mean 1, 2, 3 -- 3, 4, 5, that's analysis?

MR. STERN: Governmental deliberative privilege process, and far beyond the evidence obtained during the investigation. If you want to lay out –

MR. SATULLO: Yeah, sure. Sure. Sure.

Q. Lynn –

MR. STERN: Objection, and instruction not to answer that pending question.
* * *
Q. Where did you get the number 800?

MR. STERN: Objection to the preceding question, it's beyond the scope of evidence obtained during the investigation. The question of how the investigator performed investigation is privilege –

12

MR. SATULLO: No, no, no. I want to know simply what she did.

MR. STERN: -- and instruction not to answer the first of those two questions. And if there's any

question about what it is -- let's have that read back, so we're all clear.

Q. The question is this, did you count the missing entries, or did you count the amount of names that were on the applicant flow logs and compare them to the applications you had on hand? Did you do that?

MR. STERN: Objection, the question of how an investigator conducts an investigation is not evidence obtained during the investigation. It is the process of deliberations used by the investigator in a context of a recommendation. Don't answer that pending question.

The EEOC contends Presrite's questions as to the EEOC's "process" in this regard "do not merely seek *facts* supporting the alleged record-keeping violation but seek to have the EEOC disclose the *process* its lawyers used to identify the record-keeping violation." Therefore, the questions impermissibly "probe[] the deliberations of and among EEOC staff, including legal staff, and the EEOC's strategy for investigating the Commissioner's Charge." (Opp. at 7-8.) The EEOC also asserts that these questions of the EEOC investigator are "irrelevant" because "[w]hat the investigator thinks about [the record-keeping claim] has nothing to do with this lawsuit, and Presrite "will have a full opportunity to discover how [the EEOC's expert] identified missing applications" when Presrite deposes the EEOC's expert on September 20, 2012.

The Court agrees with the EEOC that Presrite's questions impinge on the deliberative process privilege. The questions ask Gagyi to explain the "process" Gagyi and the EEOC went through to determine that applications were missing. Answering the questions does not

13

merely require Gagyi to state facts, but requires her to explain the method of analysis the EEOC went through.

The next series of questions that Presrite seeks to compel Gagyi to answer pertain to questions asked of Gagyi in her capacity as the EEOC's Rule 30(b)(6) designee.

*Topics 1, 2, and 3*

Presrite first asked Gagyi to state what "facts" and "documents" Gagyi knows of that support the EEOC's various claims and allegations in the lawsuit.  The following questions were asked and the following objections were made as to Topics 1, 2, and 3:

Q. Lynn, please tell me in your capacity as the 30(b)(6) witness designated by the EEOC, what facts exist and documents that exist that Presrite failed or refused to hire females on the basis of their sex, and engaged in a pattern and practice of sex discrimination? I'm asking for what facts and documents exist that you can identify?

MR. STERN: Objection. Don't answer the pending question. That question is far beyond evidence obtained during the investigation. Moreover, it calls for legal analysis, because it asks the designee to parse the factual information into piles that either support or rebut specific allegations in the litigation. That's improper use of 30(b)(6), and the witness will be not answering that question.

Q. . . . . Lynn, what facts or documents are you aware of that support or rebut what the EEOC has alleged in its complaint that Presrite discriminated against females in the hiring process by refusing to refer females to agencies from whom Presrite hired applications. Let's stop there.
MR. STERN: Objection.

Q. What facts are you aware of that indicate that Presrite refused to refer females to agencies?
MR. STERN: Objection, don't answer that question. It exceeds the scope because it runs beyond

evidence obtained during the investigation. And is demanding of the Commission through its 30(b)(6) designee, an analysis of which of those facts and which of those documents

14

support, and which ones rebut a specific allegation in the complaint. And it's an improper use of 30(b)(6), calls for attorney work product and attorney analysis. And it's not to be answered by this witness.

MR. SATULLO: Okay. And would the objection be the same if I follow up with the remaining clauses of category number 2 of facts and documents supporting or rebutting the allegation that

Presrite refused to interview females and refused to hire females? Would the same

objection pertain?

MR. STERN: Ask the question, I'll give you the objection.

MR. SATULLO: Come on, I'm asking the question.

MR. STERN: Don't answer the pending question, it's beyond evidence obtained during the investigation. And it's misusing 30(b)(6) to obtain counsel's analysis, which of the thousands of documents and information that's been produced supports, and which ones rebut a specific

allegation mentioned in this designation.

Q. Lynn, what facts or documents support the EEOC's allegation in the complaint that Presrite failed to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being commented. What facts or documents support that

allegation?

MR. STERN: Objection, instruction not to answer that question. It exceeds the scope of evidence

obtained during the investigation. And is substantively objectionable, because it improperly requires a 30(b)(6) designee to parse which of the documents and information

it supports. And which ones rebut a specific allegation made in the complaint. It violates

privilege, and is instructed not to answer.

The EEOC contends these questions are all improper because they require an analysis

that only EEOC's lawyers can conduct and a party is not required to produce a Rule 30(b)(6)

designee for the sole purpose of serving as a proxy for the party's lawyer.  In support of this

proposition, the EEOC cites a single unpublished case from the District of Nebraska, *EEOC v.*

*JBS USA, LLC*, No. 8:10CV318, 2012 WL 169981 (D.Neb. Jan. 19, 2012).  In addition, the

EEOC contends the questioning should be disallowed because it has already provided the information Presrite seeks in these questions in responses the EEOC has provided to contention interrogatories.  The EEOC contends that Presrite's "continued demands for additional analysis about which facts and documents support or rebut EEOC's litigation – beyond that already provided by EEOC in response to its contention interrogatories – supports the conclusion that what Defendant really seeks is attorney work-product, EEOC's litigation strategy, and EEOC's opinion.  Such an inquiry is irrelevant and privileged."  (Opp. at 21-22.)

However, the Court will require the EEOC to provide the deposition testimony.  Even assuming the EEOC has provided Presrite with the information sought from Gagyi in its responses to contention interrogatories, this does not necessarily preclude a party is from seeking deposition testimony on the same subject.  Furthermore, *JBS USA* is not persuasive to show that the questions asked of Gagyi by Presrite above necessarily seek privileged information.[3]  Accordingly, the Court grants Presrite's motion to compel deposition testimony from Gagyi as to the questions Presrite asked seeking Gagyi's knowledge of facts and documents supporting the EEOC's claims and allegations.  This includes the questions listed

---

[3]  The district court in *JBS USA* issued a limited protective order prior to a 30(b)(6) deposition, finding that certain topics listed on the deposition notice did not simply ask for underlying facts but also asked for an interpretation or evaluation of the facts and therefore would unavoidably lead to an invasion of attorney work product.  The EEOC does not cite a case from this jurisdiction endorsing such a holding.  The Sixth Circuit has noted that contention interrogatories at least are "are a perfectly permissible form of discovery."  *Starcher v. Correctional Med. Sys., Inc.*, 144 F.3d 418, 421, n. 3 (6th Cir. 1998).  The EEOC has not persuasively demonstrated that similar "contention" inquiries are inappropriate at a deposition.

above regrading Topics 1, 2, and 3, as well as the following question Presrite asked Gagyi

with respect to Topic 7 in the notice of deposition (which can be read making a similar

"contention" inquiry):

Q. . . . what documents do you have that demonstrate that there are 800 missing applications
from names that were included on the applicant flow log?
MR. STERN: Objection to questions about what the investigator or the Commission believes
demonstrates something. A demonstration is not a fact obtained during investigation.

> *Topic 4*

> In connection with Topic 4, Presrite sought to ask Gagyi to identify "criteria" and

"instructions" she received from superiors in connection with the investigation:

Q. Can you identify any criteria or instruction you received in connection with the
investigation of Presrite concerning this commissioner's charge?
MR. STERN: Objection, to the form of question, compound. Objection with respect to
privilege on any instructions from counsel –
MR. SATULLO: I didn't say from counsel.
MR. STERN: -- or even from supervision with respect to how to conduct the investigation.
MR. SATULLO: Okay. So just so it's clear. Are you saying that instructions received from
this witness by her supervisors, even non-lawyer supervisors would be privileged?
MR. STERN: Deliberative process and law enforcement privilege essentially is a how
question.
MR. SATULLO: Well –
MR. STERN: And she's already answered that the charge is criteria –

> The EEOC's objection is well-taken that this question impermissibly probes "internal

deliberations" and communications of the EEOC.  Presrite may not ask Gagyi to testify as to

criteria or instructions she received.

> *Topic 6*

17

Regarding Topic 6, Presrite sought to ask Gagyi the following questions about the

number of applicants to Presrite during the relevant time frame.  The EEOC refused to allow

Gagyi to answer questions on this topic:

Q. In your review of your file for purposes of preparing for today's deposition, were you able
to identify the information that would respond to the inquiry, number 6?

MR. STERN: Objection. Inquiry number 6, we object to it, it exceeds information and
documents obtained during the investigation as it focuses on what the EEOC alleges in the
lawsuit.

Q.  Do you know the answer of how many applicants that the EEOC alleges applied from
2004 to the present to Presrite in the labor and operative positions that are the subject of this

case? Do you know the answer to that question?

MR. STERN: Objection, as we cited before, I believe this exceeds the scope of what was
permissible. We have substantive objections, which we've already briefed, and the court has
declined to rule on in the absence of specific questions and specific objections. We believe
this is an improper use of the 30(b)(6) –

MR. SATULLO: Are you instructing her not to answer the question?

MR. STERN: I'll instruct you not to answer this question.

MR. SATULLO: All right. Very good.

***

Q. Ms. Gagyi, do you even know, regardless of whether you're going to tell me -- don't tell
me how many. Do you know how many men applied to the labor and operative positions that

the EEOC alleges Presrite acted discriminatorily, with respect to, between the years 2004 to
the present? Do you know how many men were among those applicants? You can say same
objection and same instruction.

MR. STERN: Objection as stated before with the instruction for this witness not to answer
that question.


Q. And finally, Ms. Gagyi, in your capacity as the 30(b)(6) designee, do you even know how
many women applied for a position at Presrite in the labor and operative positions

between 2004 to the present?

MR. STERN: Objection both as to form, characterizing knowledge as even, is not the correct
form of the question. Substantive objection, same as before, exceeds the scope of what is a

permissible inquiry.

MR. SATULLO: Okay. And just to reiterate –

18

MR. STERN: And it's evasive upon privileges as already briefed.

The Court grants Presrite's motion to compel answers to these questions.  Topic 6 requests basic factual information within Gagyi's knowledge, and the EEOC has not addressed or substantiated its bases for objecting to these questions in its opposition brief.

*Topic 5*

Presrite asked Gagyi a number of different questions in connection with Topic 5. Presrite contends these questions permissibly seek "factual information and documents that identify examples of disparate treatment."  Presrite asked Gagyi:

Q. Tell me, one by one, each and every example of disparate treatment that you are familiar with in your capacity as a 30(b)(6) witness that the EEOC alleges against Presrite?
MR. STERN: Objection, with the instruction not to answer regarding information broader than EEOC's investigation.
MR. SATULLO: Keep remembering, this is the lawsuit. This is the 30(b)(6) notice. She's the one you told to come up.
MR. STERN: Further –
MR. SATULLO: Go on.
MR. STERN: Further, 30(b)(6), even properly framed is not a memory contest for someone to memorize names of individuals.

In addition, in connection with Topic 5, Presrite asked Gagyi a series of questions asking Gagyi to identify the male "comparators" the EEOC used in determining that various female applicants had been subject to disparate treatment.  Counsel for the EEOC allowed Ms. Gagyi to answer eight questions regarding whether or not Ms. Gagyi knew who the male comparator was. (See 30(b)(6) Depo., p. 99, line 2 – p. 102, line 14.)  However, on the ninth question counsel instructed the witness not to answer:

19

Q. And let's see if I can make this go a little more quickly. I want you to look over the remaining 23 names, beginning with Esther Maldonado at number 9, concluding at Thea Wellons at number 31. And take your time, take as much time as you need. And I want you to be thinking in terms of whether you can specifically recall the name or names of any individual to whom you contrasted any of those individuals that resulted in including the names of any of those individuals on Exhibit D. Do you see what I'm saying? I'm just trying to shortcut this for you, Lynn.

* * *

MR. STERN: That is privileged analysis, both by deliberative process, law enforcement privilege and attorney work product privilege. Also, the form of the question is objectionable, and I object

because it is compound and assuming that the review of a comparison employee is what

resulted in an individual being listed on Exhibit D.

Finally, for another series of questions in connection with Topic 5, Presrite provided

Gagyi with groupings of various applications and asked her whether there were any facts or

documents within the applications that supported a claim of disparate impact.  With respect to

each grouping, Presrite asked Gagyi a question similar to the following question:

Q. And so my question now is, if you look at Exhibit L, which is the application of Michael Skaruppa, and Exhibit M, which is the application of Annie Tipton, do either of those provide

factual information or documents that identify an example of disparate treatment by Presrite?

MR. STERN: Objection, with respect to characterizing. The witness has already testified and identified Mr. Skaruppa in response to previous questions of the topic –

* * *

MR. SATULLO: Read back the question about whether the application of Mr. Skaruppa and Ms. Tipton –

(Record read.)

MR. STERN: And the Commission stands on it –

MR. SATULLO: Just say we object, and instruct her not to answer and I'll move on.

MR. STERN: Object and don't answer this question.

The Court agrees with the EEOC's argument that these questions regarding Topic 5

are improper.  Although Presrite attempts to characterize its questions as seeking only

"factual information and documents" as to examples of disparate treatment, in reality, the questions are asking Gagyi for her impressions and conclusions and/or for her to conduct analyses of facts and documents.  The questions do not seek purely factual or objective information and are disallowed.

*Topic 8*

Finally, Presrite asked Gagyi questions about an incentive program the EEOC's Systemic Task Force created relative to the investigation of systemic discrimination claims. Presrite contends discovery on the EEOC's incentive program is relevant to the EEOC's motive for its investigation in this case and whether the investigation was appropriate.  The EEOC's counsel would not allow Presrite to inquire of Gagyi regarding the incentive program or the incentives Gagyi received:

Q. Let me ask you this, Ms. Gagyi. Are you aware of whether any incentive program at the EEOC has been the reason for any employee of the EEOC to have received the benefit of such incentives arising out of the investigation of Presrite in this matter?

MR. STERN: Objection, beyond the scope of the designation. Lack of foundation that the witness is knowledgeable about any incentive program --

Q. Ms. Gagyi, as you sit here today, don't tell me if anybody got any incentives; but do you know if anyone at the EEOC received incentives as the result of its investigation into Presrite in the commissioner's charge, and subsequent litigation?

A. So I don't say yes or no, I –

Q. I'm only asking if you know the answer to the question.

A. Do I know if it's yes or no?

Q. Yes.

* * *

A. I don't know if anyone else got an award, an incentive related to –

Q. Did you listen to your answer? I don't know if anyone else got an incentive?

A. I know things I've gotten.

21

Q. Okay.

A. But you should not conclude -- make any conclusions.

Q. What have you gotten that I should not make any conclusions about?

MR. STERN: Objection and instruction not to answer about specific compensation or incentives that any EEOC employee has or hasn't received –

MR. SATULLO: Okay.

MR. STERN: -- for reasons previously stated on the record.

***


Q. And in 2005 when you witnessed the Ana Lopez affidavit, what was your compensation at the EEOC?

MR. STERN: Objection, this is far beyond the scope of evidence obtained during the investigation.

Q. You probably didn't have to review your file to know it, but what is your current compensation with the government?

MR. STERN: Objection, same as before. The compensation of EEOC employees is not evidence obtained during the investigation of the charge, and exceeds the scope of the deposition.


    In connection with its inquiry as to incentive programs, Presrite also asked whether

Gagyi was the "lead" or "only" investigator in the Area Temps investigation:

Q. I only want to know whether she was the lead investigator in that case.

MR. STERN: You can answer that question.

A. I was the investigator assigned to the Area Temps case. If anyone described me as being the lead investigator, it was with a small L, and not in the title that I currently hold.

Q. Okay. I don't understand that.

A. At the time of the Area Temps investigation there was no such title as lead investigator at the EEOC.

Q. Is it fair to say that you were the -- were you the only investigator in the Area Temps case?

MR. STERN: Objection, this is –

MR. SATULLO: How am I supposed to understand her answer, Jeff, she just said it was a small L.

MR. STERN: This is going far field. Now, you're looking into other investigators –

MR. SATULLO: No, I'm trying to figure out why an affidavit from one investigation got into

another, and she was the investigator in both. I'm just trying to figure out what her role was, that's all.

MR. STERN: She's already testified –

MR. SATULLO: No, she testified it was a small L, I don't know what that means. I just asked, was there another investigator in the Area Temps case. Just let her answer that yes or no. She may say no, and we're done with it.

MR. STERN: Objection. This question goes beyond any of the topics of the 30(b)(6) –

MR. SATULLO: No, it doesn't. It's reasonably calculated to lead to admissible evidence. And let me be clear here, I want to be very perfectly clear here. Presrite is exploring whether incentives motivated people at the EEOC, you included, to pursue it at the time that it was pursued in a commissioner's charge. And want to know whether incentives played any role in that. Now, I know you got promoted, and I know you make more money. And I know that you were an investigator that took information from the Area Temps investigation, and put it in the Presrite file. And I'll tell you that it sounds to me, like you had an incentive, a personal incentive to go after Presrite. That's the way I see it.

Q. Now, you may have a different approach, and you may disagree with me. But that's what I'm investigating. And I'm simply asking you now whether -- I just want to know if you were the lead investigator in Area Temps?

MR. STERN: Objection.

MR. SATULLO: And she said if somebody identified me as the lead investigator it was with a small L. So the next logical question is simply, well, was there another investigator in the Area Temps file? If you let her answer that question you may find we can move on.

MR. STERN: Don't answer the pending question, that is not a topic in this designation.

MR. SATULLO: Okay.

The Court will allow Presrite's questions as to Topic 8.  The EEOC asserts that these questions about EEOC employees' compensation and awards is "irrelevant" and that Presrite "has articulated no reasonable basis for an inquiry" in this regard.  However, as indicated above, Presrite has articulated a basis for this inquiry.  It contends incentive programs and the incentives and compensation that the EEOC investigator received have a potential impact on the appropriateness of the EEOC's investigation of Presrite.  Presrite should be able at least to explore this topic in discovery and determine if this will lead to admissible evidence.

The Court grants in part and denies in part Presrite's motion to compel further deposition testimony of Gagyi in accordance with the discussion above.

### 2. Identification of victims of discrimination.

In addition to seeking to compel further deposition testimony, Presrite also seeks to compel the EEOC to identify "any and all alleged victims of discrimination."  Presrite asserts that it is entitled to know the exact identities of all alleged victims for whom the EEOC is seeking damages in the case.[4]  Presrite asserts that the EEOC has provided only vague and imprecise responses in discovery relative to the identification of the class claimants.  The EEOC initially provided a list of 108 claimants to Presrite in discovery[5] and stated that it also "seeks relief for the individuals listed . . . and for a class of women, who remain unidentified, who sought and/or inquired about employment opportunities with Defendant but who were dissuaded from applying, or otherwise chilled from seeking employment with Defendant, or were not hired as a result of Defendant's pattern or practice of discriminating against women."  The EEOC purported to supplement its list of claimants with the report of its expert, Robert LaJeunesse, Ph.D.  Presrite asserts that Dr. LaJeunesse's report appears to increase the class of potential claimants to 591 but does not note any specific women for whom damages are calculated.  Presrite asserts that it is entitled to know precisely the

---

[4]
      The EEOC alleges in its complaint that it brings this action against Presrite "to correct alleged unlawful employment practices on the basis of sex and to provide appropriate relief to a class of women who sought employment with . . . Presrite . . . and who were affected by Defendant's discriminatory practices."  (Complt.)

[5]
      Presrite asserts that it has determined that, of this list of claimants, Presrite hired 14; 6 declined a position; 2 did not show; and one was male.

identities of the class members for whom the EEOC will seek damages.[6]

The EEOC contends that it need not specifically identify any more female victims of discrimination at this time because Dr. LaJeunesse's report provides Presrite with a calculation of "the female shortfall in Defendant's hiring over the period from 2004 to 2011." The EEOC asserts that Presrite's motion to compel should be denied because Presrite misunderstands or refuses to accept the "the well-established scientific principle that the statistical shortfall identified in the EEOC's Expert Report is not a group of identifiable, or known, female applicants."  Instead, the statistical shortfall represents the likely number of job positions at Presrite that, in the absence of discrimination, should have been filled by one or more female applicants." (Opp. at 28-29.)  Further, the EEOC asserts that the it will seek to bifurcate trial in the case into separate liability and damage phases and that: "In the liability phase, the EEOC is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy." (Opp. at 29.) Finally, the EEOC asserts that it has "only been able to name 108 of Defendant's victims at this time" due in "large part" to Presrite's shoddy recordkeeping practices. (Opp. at 30.)

The EEOC contends, in sum, that nothing more is required of it at this time because "Defendant is now in possession of the statistical analysis that supports the EEOC's contention that Defendant discriminated against women in its hiring for entry-level position as well as EEOC's best estimate of the upper bound of the potential class size." (Opp. at 31.)

---

[6]

Presrite asserts that the EEOC's definition of the class is a "moving target" and asserts that, based on available information, the total number of female applicants to Presrite during the relevant time frame was only 415.

Presrite disputes that the EEOC's responses are sufficient, asserting that multiple courts have found that discovery of alleged victims is essential to a defendant's ability to defend itself in a case. In its reply brief, Presrite asserts that it

> is well aware of the EEOC's theory in this case, *i.e.*, that the statistical shortfall relative to female hires is evidence of discrimination. However, the fact that [the EEOC is] providing statistical information in an attempt to establish discrimination does not obviate the need to provide the names of class members. Presrite is entitled to know on whose behalf the EEOC is seeking damages. In order to defend the claim, [Presrite] need[s] to know specifically who has been damaged and who will recover if the EEOC can prove discrimination.

(Rep. at 6.)

While Presrite acknowledges that "there are missing applications," it nonetheless asserts that the "EEOC certainly has more than 108 applications from female applicants in their possession. In addition, [the EEOC has] an applicant flow log, detailing all of the applicants who applied at Presrite during the relevant time frame." (*Id.*)

Presrite's arguments are persuasive. Even if the EEOC intends to establish discrimination on the basis of statistics and statistical shortfall, at some point (even if trial is ultimately bifurcated into separate liability and damage phases), the EEOC must ultimately prove the identities of the specific women the EEOC claims suffered damages as a result of Presrite's alleged discriminatory hiring practices. Thus, Presrite is entitled to know such information in discovery so that Presrite may investigate each individual woman's claim in order to prepare its defense. Although the parties are in agreement that missing applications exist, at a minimum, the EEOC must identify for Presrite the specific women the EEOC

26

claims were victims of discrimination on the basis of the information that is available to the EEOC.

The Court grants Presrite's motion to compel the EEOC to identify from the available information all of the specific women who the EEOC claims suffered damages as a result of the EEOC's discrimination.

### II.  Presrite's Motion *in Limine*

Presrite moves the Court for an order *in limine* excluding various witnesses identified by the EEOC on July 30, 2012, in a supplemental discovery response to Interrogatory No. 3. In the supplemental response, the EEOC identified eleven witnesses who "have knowledge of a hostile work environment to Defendants' female employees."  The eleven witnesses were also identified as witnesses in a prior (2009) hostile work environment lawsuit brought against Presrite by one of the listed witnesses, LeeAnn Vejda.  The EEOC's supplemental response also identified an OFCCP (Office of Federal Contracts Compliance Programs) designee having knowledge to authenticate an OFCCP file related to a Department of Labor investigation that occurred in the years 1994-1996.

Presrite contends that all of these witnesses should be excluded under Federal Rules of Evidence 401 and 403.  It argues that this case is not a hostile work environment case; thus, the eleven witnesses the EEOC identifies to have knowledge of a "hostile work environment to Presrite's female employees" are irrelevant to this case alleging gender discrimination in hiring and that "[t]o open the door to other lawsuits and the claims of LeeAnn Vajda" would cause undue prejudice and confusion of issues in the case.  (Rep. at 7.)  Likewise, Presrite contends that documents related to a Department of Labor's investigation that occurred in

1994-1996 are irrelevant to and have "no place in this lawsuit."

The EEOC opposed Presite's motion *in limine*.  The EEOC asserts that eight of the eleven identified "hostile work environment" witnesses also have knowledge of Presrite's "hiring practices."  The EEOC also asserts that "[t]he hostile work environment testimony of the Vajda witnesses" is relevant to this present case because "other acts" of discrimination can be used to provide "probative context" to employment decisions.  The EEOC argues that "evidence of Presrite's atmosphere of condoned sexual harassment increases the probability that Presrite's hiring practices were motivated by gender bias" and is also admissible under Fed. R. Civ. P. 404(b) as a "wrong" or "other act" for purposes of establishing Presrite's motive, intent, and discriminatory state of mind in the case.  (Opp. at 34.)  Similarly, the EEOC asserts that the evidence in the OFCCP file "that Presrite hired no females into blue collar jobs . . . had no restrooms or lockers for women, made no good faith efforts to hire women . . ., did not consider those who applied . . . and OFCCP's finding 17 non-hired females at least as qualified as males who were hired instead . . . is relevant both as background and to establish motive, intent, knowledge and discriminatory state of mind regarding women."  (Opp. at 35.)

Presite disputes the EEOC's assertions that the witnesses testimony is relevant and admissible.

Presite's motion *in limine* is denied at this time.  The Court's normal and preferred practice is to consider and rule on motions *in limine* closer to trial when the full context of the case is available.

**Conclusion**

For the reasons stated above, the Court grants Presrite's motion to compel further deposition testimony of Lynn Gagyi as discussed above and to compel the EEOC to identify the alleged victims of discrimination on whose behalf it will seek to collect damages at trial. The Court denies Presrite's motion *in limine*.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 9/24/12